**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

---

**DIANE SOMERS,**

                     Plaintiff,

                                                                **Case No. 06-C-608**

        -vs-

**MICHAEL LUTERBACH and
UNITED STATES OF AMERICA,**

                     Defendant.

---

## DECISION AND ORDER

---

This action was initially a foreclosure action against Michael Luterbach ("Luterbach") in Waukesha County Circuit Court. The plaintiff, Diane Somers ("Somers"), amended her complaint to add the United States as a defendant because the United States claims a lien against the real estate. After being joined, the United States removed this action to federal court.

Somers separately moves for summary judgment against the United States and also against Luterbach. For the reasons that follow, Somers' motion for summary judgment against the United States is granted. However, the Court will not adjudicate Somers' motion with respect to Luterbach. Somers' claims against Luterbach are state law claims, so the Court will remand this case back to Waukesha County Circuit Court for further consideration thereon.

## BACKGROUND[1]

Somers is an adult residing in Silver Spring, Florida. Luterbach resides at the residence in question, S50 W36799 Pine View Lane, Dousman, Wisconsin. The Dousman property consists of approximately 70-75 acres, three to four of which are dry land upon which there is a house, a pole barn and two garages. The balance of the real estate is bog. The only legitimate access to the real estate is through a single driveway from the road to the house. The periphery of the real estate has been posted with no trespassing or equivalent signs approximately every 200 feet.

On July 1, 1991, the United States Department of the Treasury assessed taxes for Gerald Macklin. On October 19, 1991, the Department issued a notice of a federal tax lien in the amount of $299,346.76 against Gerald Macklin for unpaid taxes. On November 6, 1991, the lien was properly recorded in the Waukesha County, Wisconsin Register's Office. The United States also issued a notice of a federal tax lien against Richard Properties and Richard Properties, Inc., as alter ego of Gerald Macklin in the amount of $258,837.65. This lien was properly recorded in the Register's Office on July 9, 1993. On August 6, 1993, the Department properly recorded tax liens against Gerald Macklin's designated nominee, Orville Macklin.

In or around February 1993, Gerald Macklin entered into negotiations for the sale of the Dousman property. Luterbach entered into a land contract with Orville Macklin for the

---

[1] These findings of fact are made upon consideration of Somers' Proposed Findings of Fact [D. 39, 43], the Affidavit of Michael Luterbach [D. 57], the United States' Response to the Plaintiff's Proposed Findings of Facts [D. 61], and the United States' Proposed Findings of Facts [D. 62].

-2-

Case 2:06-cv-00608-RTR    Filed 04/15/08    Page 2 of 10    Document 65

purchase of the Dousman property. Luterbach agreed to pay $292,691.00, to be paid over a period of years at a price of $2,000.00 per month with 8% interest per annum. Orville Macklin signed the contract under seal on August 11, 1993. Since about August 1993, Luterbach and his family have occupied the real estate with the house as their homestead. Luterbach has paid the appropriate real estate taxes, but he has failed to make any payments due and owing under the Land Contract with Orville Macklin.

In 2003, Orville Macklin entered into negotiations with Somers to sell his vendor's interest in the land contract. Somers is a close friend of the Macklin family. Somers maintained a relationship with Orville Macklin, whom she had met some 10 years earlier. Somers also has a close, personal relationship with Gerald Macklin. Somers has over 15 years experience in dealing with real estate. Over the years, Somers purchased several of Orville Macklin's properties and loaned money to him.

Somers knew that Gerald Macklin had problems with the IRS and Somers was aware that a federal tax lien was filed against the Dousman property. However, Somers believed that Orville Macklin satisfied the tax liens with money obtained in a separate real estate transaction. Somers was surprised to learn of the tax liens which appeared on the title search.

On August 3, 2003, the Department issued certificates of release of federal tax liens against Gerald Macklin, Richard Properties and Richard Properties, Inc. as alter ego of Gerald Macklin, and Orville Macklin as nominee of Gerald Macklin. Said releases were recorded in the Register's Office on August 7, 2003.

-3-

Case 2:06-cv-00608-RTR    Filed 04/15/08    Page 3 of 10    Document 65

On December 16, 2003, Somers agreed to buy Orville Macklin's vendor's interest in the Dousman land contract. She did so with the understanding that any liens had been settled or otherwise resolved. The purchase price of the vendor's interest was $117,000.00, which included a $17,000.00 credit to Somers for a previously owed obligation.[2] An assignment of land contract was signed under seal and properly recorded in the Register's office on December 17, 2003. The contract lists the amount due and owing on the contract as $774,206 plus interest at 9.5% per annum from December 12, 2003. Somers used a portion of the proceeds earned in a separate real estate transaction, along with a $50,000.00 check, to complete the purchase of the assignment.[3]

After Somers purchased Orville Macklin's vendor's interest, the Department revoked the previous release of the tax lien. On January 20, 2005, a notice of federal tax lien was issued against Orville Macklin, as nominee for Gerald Macklin. The amount of the new lien totals $168,617.48.

## ANALYSIS

### I. Jurisdiction

Somers' claim against the United States must be brought under 28 U.S.C. § 2410. This statute operates as a waiver of sovereign immunity, not a jurisdictional grant. "All [§ 2410] does is waive sovereign immunity. It does not authorize quiet title suits; it does not

---

[2] In March of 2002, Somers bought an assignment of option to purchase Orville Macklin's land in Franklin, Wisconsin, and later relinquished that option at Orville Macklin's request. Somers paid $17,000 for the option.

[3] In 2003, the Dousman property had an assessed value of $482,100 and an equalized fair market value of $566,800. In 2004, the Dousman property had an assessed value of $549,700 and an equalized fair market value of $646,300.

-4-

confer federal jurisdiction over them; it merely clears away the obstacle that sovereign immunity would otherwise place in the path of such a suit." *Harrell v. United States*, 13 F.3d 232, 234 (7th Cir. 1993).

In combination with § 2410, this matter was removed pursuant to 28 U.S.C. § 1444, which provides that "[a]ny action brought under section 2410 of this title against the United States in any State court may be removed by the United States to the district court of the United States for the district and division in which the action is pending." Luterbach joined in the removal, although this was not necessary to effect the removal. *See Chrysler First Financial Services Corp. v. Greenfield*, 753 F. Supp. 939, 941 (S.D. Fla. 1991) (in actions involving multiple parties, the United States may remove the entire proceeding under § 1444, and the other defendants need not join in the petition for removal).

Although not entirely clear, it appears that removal under § 1444 operates as an independent jurisdictional grant. *See, e.g., City of Miami Beach v. Smith*, 551 F.2d 1370, 1374 n. 5 (5th Cir. 1977) (agreeing with Professor Moore that § 1444 confers a substantive right to remove, independent of any other jurisdictional limitations); *Hood v. United States*, 256 F.2d 522, 525-26 (9th Cir. 1958) (§ 1444 confers jurisdiction regardless of amount in controversy, and thus may authorize removal in case that may not have been brought in state court originally); *Noske v. Noske*, 980 F. Supp. 1026, 1030 n.9 (D. Minn. 1997) (United States' removal of action pursuant to § 1444 serves to independently vest the Court with subject matter jurisdiction, regardless of whether the Court had original jurisdiction over the matter) (collecting cases).

Even in the absence of the independent jurisdictional grant, the Court would have subject matter jurisdiction over Somers' quiet title claim against the United States. *See, e.g., Wilkinson v. United States of America*, 724 F. Supp. 1200, 1204 (W.D.N.C. 1989) (district court had original jurisdiction where essential focus of the action was the validity, priority and extinguishment of an IRS tax lien on plaintiff's property, which was governed by federal law); *see also* 28 U.S.C. § 1340 (district courts have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue).

## II.     Summary judgment against the United States

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The United States reserves the right to place a lien on property for unpaid federal taxes. "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and right to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. However, the "lien imposed by section 6321 shall not be valid as against any purchaser, *holder of a*

-6-

*security interest*, mechanic's lienor, or judgment lien creditor until notice thereof . . . has been filed by the Secretary." 26 U.S.C. § 6323(a) (emphasis added).

The United States filed the appropriate notice in 1991, but the United States released the lien on August 7, 2003. New notices were filed on January 20, 2005. Somers filed her assignment during this "gap period," so she claims that her interest is free and clear of the lien because she is a "holder of a security interest" under § 6323(a).

A security interest is defined as:

> any interest in property acquired by contract for the purpose of securing payment or performance of an obligation. . . . A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with *money or money's worth*.

26 U.S.C. § 6323(h)(1) (emphasis added). Money or money's worth is defined by the regulation as "money, a security . . ., tangible or intangible property, services, and other consideration reducible to a money value." 26 C.F.R. § 301.6323(h)-1(a)(3). Somers parted with $100,000 in the form of a negotiable instrument, as well as $17,000 as the forgiveness of a previous debt. Putting the $17,000 portion aside, there is no question that $100,000 qualifies under the statute and regulation as "money or money's worth."[4] *See, e.g., Adelvision L.P. v. Groff*, 859 F. Supp. 797, 806 (E.D. Pa. 1994) (exchange of $1,050,000.00 met definition of money or money's worth).

---

[4] It is undisputed that Somers filed the assignment of the land contract in the Register of Deed's office in Waukesha County on December 17, 2003, thereby protecting her interest under local law. *See* Wis. Stat. § 706.08(1)(a); 26 U.S.C. § 6323(h)(1)(A).

-7-

The United States argues that Somers did not give "adequate and full consideration" for Orville Macklin's vendor's interest in the land contract. In support, the United States cites the disparity between the fair market value of the land (approximately $600,000) and the amount of money Somers paid for the security interest ($117,000).

To qualify as a *purchaser*, one must part with adequate and full consideration. *See* 26 U.S.C. § 6323(h)(6) ("The term 'purchaser' means a person who, *for adequate and full consideration* in money or money's worth, acquires an interest . . . . in property . . .") (emphasis added). However, Somers does not argue that she qualifies as a purchaser. Instead, as noted above, she argues that she qualifies as a holder of a security interest. Under the applicable statute and regulations, the holder of a security interest is *not* required to part with full and adequate consideration, only money or money's worth.[5] This distinction recognizes the risk of default inherent in the secondary mortgage market. In the instant case, the risk is apparent in that Luterbach is facing foreclosure for failure to make payments under his Land Contract with Orville Macklin.

Therefore, the Department of Treasury's tax lien in the Dousman property is subordinate to Somers' security interest therein. The Court recognizes that Somers and the United States stipulated to the dismissal of Somers' request for a declaratory judgment. [D. 28]. This stipulation only recognizes the established law that the declaratory judgment

---

[5] The cases cited by the United States discuss qualification as a purchaser, not as the holder of a security interest, so they are not on point. *See, e.g., United States v. McCombs*, 928 F. Supp. 261, 267-68 (W.D.N.Y. 1995) (purchaser must obtain property in exchange for adequate and full consideration); *A&B Steel Shearing & Processing, Inc. v. United States*, 934 F. Supp. 254, 258 (E.D. Mich. 1996) (corporation which acquired undeveloped property from estate could not be "purchaser" given that property was worth substantially more than purchase price); *United States v. Thompson*, 966 F. Supp. 1140, 1143 (S.D. Ala. 1997) (taxpayers were bona fide purchasers of property in question).

-8-

statute, 28 U.S.C. § 2201 et seq., prohibits declaratory relief against the United States with respect to federal tax matters. *See Barmes v. I.R.S.*, 116 F. Supp. 2d 1007, 1013 n.3 (S.D. Ind. 2000). As noted above, the Court's declaration is made pursuant to § 2410, not § 2201.

### III. Remaining claims

Having adjudicated the United States' interest in this case, what remains is the underlying foreclosure action between Somers and Luterbach. Generally, a federal court should dismiss pendent state law claims without prejudice if the federal claims are resolved before trial. *See Redwood v. Dobson*, 476 F. 3d 462, 467 (7th Cir. 2007); 28 U.S.C. § 1367(c)(3). The Waukesha County Circuit Court was in the process of adjudicating the foreclosure action when the United States was joined and the entire case was removed to federal court. The circuit court issued a summary judgment ruling which may or may not resolve the issues between Somers and Luterbach in their entirety. (Docket No. 59-1). Therefore, the Court will defer its ruling to the more appropriate forum. *See, e.g., Kasdon v. G.W. Zierden Landscaping, Inc.*, 541 F. Supp. 991, 999 (D. Md. 1982) (In removed quiet title action under § 2410 and § 1444, once claims against United States were adjudicated, case should be remanded to state court where the claims "may be better litigated").

-9-

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. Somers' motion for summary judgment against the United States [D. 37] is **GRANTED**. Pursuant to 26 U.S.C. § 6323(f), Somers' security interest in the Dousman property has senior priority over the United States Department of the Treasury's re-filed federal tax lien. The Clerk of Court shall enter judgment against the United States accordingly;

2. Somers' motion for summary judgment against Luterbach [D. 40] is **DISMISSED** without prejudice; and

3. The remaining portion of this case, pertaining to the claims between Somers and Luterbach, is **REMANDED** to Waukesha County Circuit Court.

Dated at Milwaukee, Wisconsin, this 15th day of April, 2008.

        **SO ORDERED,**

        **s/ Rudolph T. Randa**
        **HON. RUDOLPH T. RANDA**
        **Chief Judge**